IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

FEB 1 1 2025

FILED

A.K.J., minor, next of kin,       *
through her mother and           *
guardian ad litem, Letayia       *
K.D. Anderson; and KEYANA         *
GAINES, Administratrix of the     *
Estate of Jermaine Jones, Jr.,   *
Plaintiffs' Decedent,           *
                                *
    Plaintiffs,                 *
                                *       CV 123-153
      v.                       *
                                *
RICHARD ROUNDTREE, Sheriff       *
Augusta-Richmond County,         *
individually, as a policy       *
maker and supervisor of all       *
Augusta-Richmond County           *
Sheriffs' Deputies, et al.,       *
                                *
    Defendants.                 *
                                *

---

**O R D E R**

---

Plaintiffs initiated this action on October 11, 2023. (Doc. 1.) Presently pending before the Court are Defendant Russell's motion to dismiss Counts 4, 5, and 9 (Doc. 14), Defendant Gaiter's motion to dismiss Counts 4, 6, and 9 (Doc. 15), and Defendant Roundtree's motion to dismiss Count 8 (Doc. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the following reasons,

---

[1] The Court notes that Defendant Gaiter's motion repeatedly refers to Defendant Russell as the moving party and states in its introduction it seeks to dismiss Counts 4, 5, and 9.  (See Doc. 15, at 2.)  However, after a thorough review of the docket and relevant filings, the Court construes this motion to be intended as Defendant Gaiter's motion to dismiss Counts 4, 6, and 9.

Defendant Russell's motion is **GRANTED**; Defendant Gaiter's motion is **GRANTED** as to Count 4, **GRANTED IN PART** and **DENIED IN PART** as to Count 6, and **DENIED** as to Count 9; and Defendant Roundtree's motion is **GRANTED IN PART** and **DENIED IN PART** as to Count 8.

## I. BACKGROUND

This action arises out of a traffic stop conducted by Richmond County Sheriff's Deputies on October 11, 2021. (Doc. 1, at 3.) Around 7:14 p.m. that evening, Jermaine Jones Jr. ("Jones") and his father, Jermaine Jones Sr., were passengers in a car owned and driven by another relative, Mr. Baker. (Id.) The trio were traveling near the Augusta Municipal Golf Course when Defendant Brown initiated a traffic stop of Mr. Baker's car. (Id.) Defendants Brown and Russell, both Richmond County Sheriff's Deputies, had been conducting an operation nearby, but the suspect of the operation had escaped. (Id.) Though Defendant Brown alleges he pulled Mr. Baker's car over due to an obscured license plate, Plaintiffs allege Defendants Brown and Russell believed their suspect in the drug operation may have been traveling in Mr. Baker's car. (Id. at 3-4.) Plaintiffs also allege Defendants Brown and Russell wanted to search Mr. Baker's car for drugs. (Id.)

Once pulled over, Mr. Baker provided the deputies on scene - Defendants Russell, Gaiter, Brown and Tarpley - his license and

insurance information. (<u>Id.</u> at 4.) At some point, Mr. Baker also consented to a search of his vehicle. (<u>Id.</u>) The deputies ordered the vehicle occupants out of the car, patted them down for weapons, and ordered them to sit on the curb behind the vehicle while it was searched. (<u>Id.</u>) No weapons were found during the pat-downs, and the deputies did not handcuff Jones, his father, or Mr. Baker. (<u>Id.</u>) Once the vehicle occupants were seated on the curb, Defendant Russell stood behind them, within arm's reach of Jones. (<u>Id.</u>)

At some point, Defendant Russell noticed Jones was exhibiting shallow breathing and suspected he was in "flight mode." (<u>Id.</u> at 5.) Then, once Jones was seated on the curb, Defendant Russell saw him "getting ready to stand up and flee." (<u>Id.</u>) Defendant Russell, however, did not order Jones to remain seated or otherwise attempt to prevent him from standing. (<u>Id.</u>) Defendant Gaiter, standing nearby, heard Jones tell his father he was preparing to run. (<u>Id.</u>) Jones then stood up and "took one slow step." (<u>Id.</u>) Then, Defendant Gaiter began to run toward Jones, and, as Jones "was taking his second or third step," Defendant Gaiter tackled Jones "near the head and shoulders." (<u>Id.</u>) Jones fell, his head hitting the pavement, with Defendant Gaiter's weight on top of him. (<u>Id.</u>)

Around the same time that Defendant Gaiter began running toward Jones, Defendant Russell deployed his taser, hitting Jones

in the back.   (Id.)   The taser caused Jones to "lose control" at the time Defendant Gaiter tackled him.   (Id.)   After tackling Jones, Defendant Gaiter "securely pinn[ed] him to the ground" by pushing his knee into Jones's back.   (Id. at 21-22.)   At this point, Jones, whose own hands were pinned under him, "at most[] was passively resisting . . . but not offensively assaulting" any officers.   (Id. at 22.)   Nevertheless, Defendant Gaiter "hit [Jones] in the head at least three times with his fist, or heel of his hand, while [Jones]'s head was pinned against or near the pavement . . . ."   (Id. at 5.)   After the tackle, but before Defendant Gaiter struck Jones, an officer searching the vehicle yelled, "There's a gun under his seat, that's why he ran."   (Id.)

Defendant Gaiter later drove Jones to jail, and Jones, who requested to go to the hospital while en route to the jail, was nonresponsive when they arrived.   (Id. at 6.)   Defendant Gaiter then drove Jones to the hospital, where Jones subsequently underwent two emergency brain surgeries within twelve hours.   (Id.) Jones never regained consciousness.   (Id.)   He died on October 18, 2021, one week after the traffic stop.   (Id.)

Medical records indicate Jones had multiple brain hemorrhages and brain swelling when he arrived at the hospital on October 11, 2021.   (Id.)   He also had lacerations and contusions in three separate areas of his head: the right front side, the left front side, and the back.   (Id.)   According to the treating emergency

4

room physician, Jones's head injuries were "much more severe than what would be caused by a single fall." (Id. at 7.)  A forensic pathology report identified homicide as the cause of death.  (Id.)

Jones's mother, as the administratrix of his estate, and Jones's minor daughter, as his sole surviving next of kin, filed this action on October 11, 2023, asserting claims under 42 U.S.C. § 1983 and Georgia tort law. (Id. at 2, 7.)  The claims relevant to the motions to dismiss are: Count 4, which alleges Defendants Russell and Gaiter used per se excessive force against Jones in violation of the Fourth Amendment; Count 5, which alleges Defendant Russell's use of the taser against Jones was excessive force in violation of the Fourth Amendment; Count 6, which alleges Defendant Gaiter used excessive force in violation of the Fourth Amendment when tackling Jones and striking him in the head; Count 8, which alleges supervisory liability as to Defendant Roundtree regarding Defendants Russell and Gaiter's use of force against Jones; and Count 9, which alleges state law claims for assault or battery against Defendants Russell and Gaiter. (Id. at 14-23, 26-29.)

On March 3, 2024, Defendant Roundtree moved to dismiss Count 9, Plaintiffs' sole claim against him. (Doc. 13.)  That same day, Defendants Russell and Gaiter filed partial motions to dismiss Count 4, Count 5 (Russell only), Count 6 (Gaiter only), and Count 8. (Doc. 14; Doc. 15.)  Plaintiffs responded in opposition to all three motions (Doc. 25; Doc. 29; Doc. 30), Defendants Russell and

Gaiter replied (Doc. 37; Doc. 36), and Plaintiffs filed a sur-reply as to Defendant Russell's motion only (Doc. 39.).   The deadline for Defendant Roundtree to file a reply has passed, so the motions are now ripe for the Court's review.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).   To survive a defendant's Rule 12(b)(6) motion to dismiss, therefore, a plaintiff's complaint must include enough factual allegations "to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." Id. at 555, 570.   Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.   The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).   At this stage, the Court must accept as true all facts alleged in the complaint and construe all

6

reasonable inferences in the light most favorable to the plaintiff. Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

## III. QUALIFIED IMMUNITY

The Court first addresses Defendants Roundtree, Russell, and Gaiter's arguments that Plaintiffs' federal claims against them are barred by qualified immunity. (Doc. 13, at 5-10; Doc. 14, at 10-13; Doc. 15, at 10-14.)

### A. Legal Standard

"Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation and internal quotation marks omitted). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alteration and internal quotation marks omitted). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). Because "[t]he line between lawful and unlawful conduct is often vague," qualified immunity "demands that a bright line be crossed." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1558 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). "Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Courts then utilize a two-part framework to evaluate the qualified immunity defense. First, the Court addresses whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, then the Court asks whether the right violated was "clearly established." Id. Depending on the unique circumstances presented in each case, however, courts are "permitted to exercise

their sound discretion" in deciding which of the two Saucier prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009); accord Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

In 42 U.S.C. § 1983 suits, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998) (citations omitted), overruled on other grounds by Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010); accord Wooten v. Campbell, 49 F.3d 696, 699 (11th Cir. 1995). To protect public officials from meritless claims, the complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (citation omitted); see also Staco v. Miami-Dade Cnty., 536 F.Supp.2d 1301, 1304 (S.D. Fla. 2008) ("[A] claim can be dismissed where a plaintiff pleads facts or makes admissions that demonstrate that a defense is applicable on the face of the pleadings.") (citing Marsh v. Butler Cnty., 268 F.3d 1014, 1022 (11th Cir. 2001)). Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the Court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." Williams v. Bd. of Regents of

_Univ. Sys. of Ga._, 477 F.3d 1282, 1300 (11th Cir. 2007) (citing _Williams v. Ala. State Univ._, 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam)).

**B. Discussion**

The Court addresses in turn Defendants' assertions of qualified immunity with respect to each challenged federal claim.

1. Count 4: Per Se Excessive Force

Defendants Russell and Gaiter move to dismiss Count 4, which alleges per se excessive force in violation of the Fourth Amendment. (Doc. 14, at 2; Doc. 15, at 2; Doc. 1, at 14–15.) Specifically, Count 4 states "Defendants [Russell and Gaiter] had no authority to use force on [Jones]" because "[Jones] was not lawfully seized by Defendants" when he began to leave the scene, "[n]or was there any objective basis or probable cause to arrest [Jones] for a crime" when the tasing and tackle occurred. (Doc. 1, at 14.)

Neither Defendant Russell nor Gaiter offers any argument supporting dismissal of this claim. However, "a claim that any force in an illegal stop . . . is excessive . . . is not a discrete excessive force claim." _Jackson v. Sauls_, 206 F.3d 1156, 1171 (11th Cir. 2000) (citation omitted). Rather, such claim "is subsumed in the illegal stop . . . claim." _Id._ (citing _Williamson v. Mills_, 65 F.3d 155, 159 (11th Cir. 1995) ("damages recoverable on [plaintiff]'s false arrest claim include damages suffered

10

because of the use of force in effecting the arrest").) Multiple counts in Plaintiff's complaint are premised directly upon Defendants' allegedly unlawful detention of Jones during the traffic stop. (See Doc. 1, at 7-12.) Therefore, any damages resulting from excessive force used during an illegal stop will be awarded under those claims, if successful, so Plaintiffs' per se excessive force claim is subsumed in those claims. The Court therefore dismisses Count 4 with respect to Defendants Russell and Gaiter.

2. Count 5: Excessive Force by Defendant Russell

In Count 5, Plaintiffs allege Defendant Russell used excessive force against Jones in violation of the Fourth Amendment. (Doc. 1, at 15.) Specifically, Defendant Russell allegedly violated Jones's Fourth Amendment rights "by failing to use physical restraint before [Jones] could stand up, seeing and knowing [Jones] was standing up to leave, and then, without warning, tasing [Jones] in the back," when Jones was not a threat to others and "engaged in [no]thing more than passive flight." (Id.)

Neither side asserts that Defendant Russell was not acting within his discretionary authority when he tased Jones. Thus, the burden is on Plaintiffs to show qualified immunity is inappropriate. Bostic, 458 F.3d at 1303. For the reasons explained below, the Court finds Defendant Russell did not violate

11

a clearly established right, so he is entitled to qualified immunity for his actions in tasing Jones.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Put another way, "the state of the law at the time of an incident" must have given the defendant "fair warning" of the unconstitutionality of his conduct. Callwood v. Jones, 727 F. App'x 552, 559 (11th Cir. 2018) (citation and internal quotation marks omitted). The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009)).

Plaintiffs argue the facts of Bradley v. Benton, 10 F.4th 1232 (11th Cir. 2021), clearly established the unconstitutionality of Defendant Russell's conduct. (Doc. 29, at 14-16.) In Bradley, an officer pulled over a driver for a purported tag violation. Id. at 1236. The driver, though initially compliant with the officer's commands, eventually fled the scene on foot, with the

12

officer giving chase.  _Id._  During the chase, the officer fired his taser at the driver, hitting him, while the driver was climbing atop an eight-foot-high concrete wall.  _Id._ at 1237.  The taser shock temporarily incapacitated the driver, who fell from the wall, broke his neck, and died.  _Id._  Conceding that "a taser is generally not a deadly weapon," the Eleventh Circuit nonetheless held that "tasing a person who is at an elevated height" constitutes deadly force because it "may come with a substantial risk of serious bodily harm or death."  _Id._ at 1241 (citations omitted).  The court found the use of deadly force against the driver objectively unreasonable under the circumstances.  _Id._  It also found the officer violated a clearly established right based upon the "analogous facts" in another deadly force case, _Tennessee v. Garner_, 471 U.S. 1 (1985), and because the unconstitutionality of the officer's conduct was "obviously clear."  _Id._ at 1243-44.

Despite some similarities between the facts of _Bradley_ and the facts here, the Court finds _Bradley_ did not give Defendant Russell fair warning that tasing Jones would violate a clearly established right.  _Bradley_'s holding is largely premised upon the fact that the fleeing driver was atop an eight-foot wall when he was tased.  Here, Jones was not at an elevated height when tased, nor do Plaintiffs allege Defendants Russell and Gaiter engaged in some sort of coordinated effort when they independently acted to apprehend Jones, such that Defendant Russell knew Jones was at a

higher risk of serious injury when he deployed the taser. While
Bradley may have given Defendant Russell fair warning had Jones
been at an elevated height or in a similarly precarious position,
that warning simply does not extend to the facts here.

Plaintiffs also point to Walker v. City of Sandersville, No.
5:20-CV-438, 2021 WL 5410896 (M.D. Ga. Nov. 18, 2021), for the
proposition that the risk of tasing someone at an elevated height,
as occurred in Bradley, is similarly dangerous to tasing someone
running on a hard surface. (Doc. 39, at 2.) Walker was decided
after the events at issue and is not binding precedent, so it
cannot have clearly established Defendant Russell's actions were
unconstitutional. 2021 WL 5410896. Furthermore, the court there
explicitly stated that "there is no clearly established law that
would have informed [the officer] that he should not have tased
[the plaintiff] as he fled the scene." Id. at *3. Walker,
therefore, does not alter the Court's analysis.

Finally, Plaintiffs argue "[a] general principle also applies
with obvious clarity" to show the unconstitutionality of Defendant
Russell's conduct. (Doc. 39, at 10.) This general principle is
that of proportionality between the force used by the officer and
the conduct of the arrestee. (Id.) While the Court agrees
Defendant Russell likely could have used a lesser degree of force
before resorting to his taser, "[t]he Fourth Amendment does not
require officers to use the least intrusive or even less intrusive

14

alternatives in search and seizure cases." Buckley v. Haddock, 292 F. App'x 791, 796 (11th Cir. 2008) (citation omitted). And Plaintiffs marshal in support of their position no cases, apart from Bradley, involving disproportionate force against a *fleeing* suspect. (See Doc. 39, at 11 (citing Patel v. City of Madison, 959 F.3d 1330, 1339 (11th Cir. 2020) (finding takedown of plaintiff who "made no movement of resistance" constituted excessive force); Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2011) (finding tasing constituted excessive force when plaintiff put his hands up and took one step backward while facing the officer); Reese v. Herbert, 527 F.3d 1253, 1273 (11th Cir. 2008) (finding excessive force used against plaintiff, who was lying down and not resisting, when officers beat and kicked plaintiff, twisted his arm so that it fractured, and applied pressure point techniques, then pepper sprayed him once handcuffed)).) Therefore, Plaintiffs' cited authorities do not support a general principle that would govern the instant context with obvious clarity.

Plaintiffs do not argue that Defendant Russell's actions were so egregious that the right was clearly violated, nor is the Court aware of authority that would support such argument. Therefore, the Court finds Plaintiffs have not carried their burden of showing the alleged unconstitutionality of Defendant Russell's conduct was clearly established at the time of the incident. The Court therefore **GRANTS** Defendant Russell's motion to dismiss Count 5.

### 3. Count 6: Excessive Force by Defendant Gaiter

In Count 6, Plaintiffs allege Defendant Gaiter used excessive force against Jones in violation of the Fourth Amendment. (Doc. 1, at 19-23.) Specifically, Defendant Gaiter allegedly violated Jones's Fourth Amendment rights when, after seeing Jones stand up and take two or three steps, he "did a flying tackle at, and hit [Jones's] upper body and head, driving [Jones's] upper body and head to the pavement, with Gaiter's body landing on top of [Jones's] upper body and head." (Id. at 20.) Plaintiffs allege Defendant Gaiter intentionally targeted Jones's upper body and head when he tackled Jones. (Id. at 21.) Once Jones was on the ground, Plaintiffs further allege that Gaiter, weighing about seventy pounds more than Jones, pushed his knee into Jones's back, then struck Jones in the head with his hand or fist multiple times while Jones's head was pinned against the pavement. (Id.) Though Jones may have "passively resisted" while on the ground, Plaintiffs contend Jones did not pose a risk to the officers at any time after the tackle.[2] (Id. at 22.)

Neither side argues Defendant Gaiter did not act within his discretionary authority during the incident. Therefore, the Court

---

[2] Plaintiffs do not specify what they mean by "passive resistance." Because the Court interprets all facts in the light most favorable to Plaintiffs at this stage of the proceedings, it understands this to mean that Jones was not necessarily physically struggling against or assaulting the deputies. See, e.g., United States v. Bailey, 691 F.2d 1009, 1018 (11th Cir. 1982) (arrestee passively resisted by "going limp").

16

must address whether Plaintiffs' allegations properly assert Defendant Gaiter violated a clearly established constitutional right. The Court addresses the tackle and post-tackle force separately.

> a. *Defendant Gaiter's Tackle of Jones*

For the reasons explained below, the Court finds Defendant Gaiter is entitled to qualified immunity for his actions in tackling Jones because it was not clearly established at the time that this use of force was unconstitutional.

Plaintiffs argue Defendant Gaiter was on notice of the unconstitutionality of the tackle because of materially similar controlling case law and because of the "obvious clarity" of its unconstitutionality. (Doc. 30, at 9.) Regarding controlling case law, Plaintiffs rely upon Eleventh Circuit precedent denying qualified immunity to officers who "use[] gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." (Id. (citing Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014)).) In Saunders, the Eleventh Circuit denied qualified immunity to an officer who slammed an arrestee's head against hot pavement when the arrestee was handcuffed, compliant, and not resisting or attempting to flee. 766 F.3d at 1265. Other cases cited by Saunders similarly denied qualified immunity when force was used against a suspect who was compliant and not resisting. See, e.g., Priester v. City of Riviera Beach, 208 F.3d

919, 923-24 (11th Cir. 2000) (finding excessive force alleged when officers released police dog on suspect who was lying down and not resisting); <u>Slicker v. Jackson</u>, 215 F.3d 1225, 1227 (11th Cir. 2000) (finding excessive force alleged when officer slammed non-resisting, handcuffed arrestee's head into pavement); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002) (finding excessive force alleged when officer slammed handcuffed arrestee's head into car even when she posed no threat). The glaring difference between these cases and the instant matter is that Plaintiffs admit Jones was *not* compliant, and in fact was in the process of fleeing the scene after the deputies had directed him to wait on the curb. (Doc. 1, at 4-5.) Therefore, <u>Saunders</u> and the cases cited therein did not give fair warning to Defendant Gaiter that his conduct in tackling Jones as Jones tried to flee was unconstitutional.

Furthermore, though decided after the underlying events here, the Eleventh Circuit's discussion in <u>Turner v. Ochoa</u> is instructive. No. 24-10707, 2024 WL 4346516 (11th Cir. Sept. 30, 2024). There, a deputy attempted to arrest a one hundred twenty-pound woman suspected of driving under the influence. <u>Id.</u> at *1. While being handcuffed, the driver "pushed away from [the deputy] and moved her other arm out of his reach." <u>Id.</u> The deputy then tackled her, breaking her arm in the process, an injury for which she required surgery. <u>Id.</u> Without deciding whether the deputy violated the driver's Fourth Amendment rights, the Eleventh

Circuit determined the deputy's use of force was not clearly unconstitutional. Id. at *3. The court grounded its holding in the fact that the driver *was* resisting arrest, whereas other cases finding similar conduct unconstitutional involved a non-resisting suspect. Id. at *5. The same logic applies here, as Plaintiffs have not offered, nor is the Court aware of, a controlling case finding that apprehending a non-compliant or fleeing suspect by tackle or other similar force violates clearly established law.

In the alternative, Plaintiffs argue the law was clearly established because "the Eleventh Circuit has concluded that employing gratuitous force against a docile suspect meet[s] the 'obvious clarity' test." (Doc. 30, at 9.) Under this test, the court "inquires whether [the officer's] conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." Helm v. Rainbow City, 989 F.3d 1265, 1276 (11th Cir. 2021) (alterations adopted) (citations and internal quotation marks omitted). "Fourth Amendment excessive force claims that satisfy the 'obvious clarity' exception are typically characterized by egregious and despicable conduct that lacks any sort of reasonable justification." Duncan v. Wade, No. 7:20-CV-298, 2020 WL 3872739, at *8 (N.D. Ala. July 9, 2020), aff'd, 851 F. App'x 959 (11th Cir. 2021); see, e.g., Helm, 989 F.3d at 1276 ("obvious clarity" test

met when officer tased teenage girl three times while she was immobilized, non-threatening, and suffering a grand mal seizure); Oliver, 586 F.3d at 908 ("obvious clarity" test met when officers tased man eight or more times without trying to arrest him, even after man began writhing in pain on hot pavement and then went limp); Patel, 959 F.3d at 1343-44 ("obvious clarity" test met when officer conducted forceful leg-sweep takedown of "somewhat frail" man who was not attempting to flee).

In contrast to these cases, though Jones weighed less than Defendant Gaiter, Plaintiffs do not allege he was frail or had physical impairments of which Defendant Gaiter knew. Furthermore, when Defendant Gaiter initiated the tackle, Jones was not restrained or incapacitated, but rather was attempting to flee. Therefore, the Court finds Defendant Gaiter's alleged conduct regarding the tackle falls short of the type of egregious conduct the Eleventh Circuit has found satisfies the "obvious clarity" test.

Because Defendant Gaiter did not violate clearly established law when he tackled Jones, the Court **GRANTS** his motion to dismiss Count 6 as it pertains to his conduct in tackling Jones.

> b. *Defendant Gaiter's Post-Tackle Force Against Jones*

Turning to the force Plaintiffs allege Defendant Gaiter used against Jones *after* the tackle, the Court finds Plaintiffs properly allege such force violated Jones's Fourth Amendment rights.

20

"The Fourth Amendment's freedom from unreasonable searches and seizures [also] encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197 (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)). However, "[n]ot only does the right to make an arrest or investigatory stop necessarily carry with it the right to use some degree of physical coercion or threat thereof to effect it, but . . . the typical arrest involves some force and injury." Reese, 527 F.3d at 1272 (alteration, internal quotation marks, and citations omitted). While the Fourth Amendment requires police officers to be objectively reasonable in conducting searches and seizures, it does not require them "to use the least intrusive or even less intrusive alternatives . . . ." Menuel v. City of Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994) (citation omitted). The force used "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Post, 7 F.3d at 1559 (quoting Graham, 490 U.S. at 396).

"[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (citation omitted). The need for an officer's use of force "is measured by the severity of the

crime, the danger to the officer, and the risk of flight." <u>Lee</u>, 284 F.3d at 1198.

Plaintiffs' complaint, read in the light most favorable to them, shows Jones was temporarily incapacitated by the taser at the same time he was tackled. (Doc. 1, at 5.) Moreover, immediately following the tackle, the much heavier Defendant Gaiter was on top of and in control of Jones. (<u>Id.</u> at 5, 28.) Though Jones may have been passively resisting, he was not assaulting Defendant Gaiter or any other officer.[3] (<u>Id.</u> at 22.) Nonetheless, Defendant Gaiter struck Jones in the head multiple times while Jones's head was pinned against the asphalt, leaving Jones with head injuries in excess of those caused by his fall from the initial tackle and which contributed to his death. (<u>Id.</u> at 7, 21-22.) Based upon these facts, Plaintiffs have sufficiently alleged Defendant Gaiter used excessive force against Jones when he struck Jones in the head while Jones was pinned down and under control.

The Court also finds the unconstitutionality of Defendant Gaiter's alleged conduct was clearly established at the time of the incident. Since well before October 2021, the Eleventh Circuit "[has] repeatedly ruled that a police officer violates the Fourth

---

[3] Though Defendant Gaiter asserts Jones's "[passive resistance] was a fight or scuffle between Defendant Gaiter and [Jones]," at this stage in the proceedings the Court must look to the facts alleged in the complaint and read them in the light most favorable to Plaintiffs. (Doc. 15, at 14.)

Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." <u>Saunders</u>, 766 F.3d at 1265 (citations omitted). Defendant Gaiter, therefore, had fair warning that striking Jones in the head, while Jones was pinned to the ground and not threatening or actively resisting, violated Jones's Fourth Amendment right to be free from excessive force.

In sum, while Defendant Gaiter is entitled to qualified immunity for his conduct in tackling Jones, the Court **DENIES** his motion to dismiss Count 6 as it pertains to his post-tackle force against Jones.

4. <u>Count 8: Supervisory Liability as to Defendant Roundtree</u>

In Count 8, Plaintiffs allege Defendant Roundtree is liable under 42 U.S.C. § 1983 for the excessive force by Defendants Russell and Gaiter detailed in Counts 5 and 6. (Doc. 1, at 26-28.) Defendant Roundtree moves to dismiss this claim. (Doc. 13.)

Because the Court has found Defendant Russell is entitled to qualified immunity as to Count 5, Plaintiffs have no supervisory liability claim against Defendant Roundtree based upon Defendant Russell's conduct. <u>See</u> <u>Foulke v. Weller</u>, No. 22-13942, 2024 WL 2761778, at *8 (11th Cir. May 29, 2024) (citations omitted) ("[T]here can be no policy-based liability or supervisory liability when there is no underlying constitutional violation.").

23

As to Defendant Gaiter's conduct, which Plaintiffs' complaint alleges is entirely separate from that of Defendant Russell, Defendant Roundtree offers no argument as to why he should not be liable. (See Doc. 13.) Consequently, the Court finds he has waived the issue at this stage of the proceedings. See U.S. Steel Corp. v. Astrue, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (declining to address "perfunctory and underdeveloped argument"); Anthony v. Farmer, No. CV 123-095, 2024 WL 2175703, *3 (S.D. Ga. May 14, 2024) ("A party . . . waives an issue by failing to make any substantive arguments with respect to that issue.") (quoting Zarate v. U.S. Att'y Gen., 307 F. App'x 289, 290 (11th Cir. 2009)).

The Court therefore **GRANTS** Defendant Roundtree's motion to dismiss Count 8 with respect to claims based on Defendant Russell's conduct and **DENIES** the motion with respect to claims based on Defendant Gaiter's conduct.

## IV. OFFICIAL IMMUNITY

Count 9 alleges state law assault or battery claims against Defendants Russell and Gaiter, who argue such claims are barred by official immunity. (Doc. 1, at 28-29; Doc. 14, at 13; Doc. 15, at 14.) Under Georgia law, official immunity protects county officers and employees from certain state law claims when the claim arises out of the performance of a discretionary function. See Keele v. Glynn Cnty., 938 F. Supp. 2d 1270, 1308-09 (S.D. Ga. 2013).

However, "[i]t does not protect officials who negligently perform or fail to perform their ministerial functions," or those who "act with actual malice or intent to cause injury in the performance of their official functions." Id. at 1309 (citations and internal quotation marks omitted).

"In the context of official immunity, actual malice requires a deliberate intention to do wrong," which is "the intent to cause the harm suffered by the plaintiffs." Selvy v. Morrison, 665 S.E.2d 401, 404-05 (Ga. Ct. App. 2008) (quoting Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999); Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007)) (internal quotation marks omitted). A deliberate intention to do wrong may be inferred from a police officer's use of "unnecessary and excessive force." Hill v. Mull, No. 5:04CV329, 2006 WL 3022280, at *14 (M.D. Ga. Oct. 23, 2006) (finding jury could infer actual malice when officer threw handcuffed arrestee to the ground and kneed him in the back while another officer stood on arrestee's feet); see also Tabb v. Veazey, No. 1:05-CV-1642, 2007 WL 951763, at *12 (N.D. Ga. Mar. 28, 2007) ("[I]f an officer uses force intentionally and without justification [then] they acted solely with the tortious actual intent to cause injury.") (quoting Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999) (internal quotation marks omitted)). Furthermore, simply alleging a defendant acted with actual malice will not overcome official immunity. Clark v. Chapeau, No. 1:22-CV-4404, 2023 WL 11767043,

at *6 (N.D. Ga. Sept. 29, 2023) ("Although Plaintiff alleges that 'Defendant acted intentionally' while 'motivated by anger' . . . , this is not sufficient to plead actual malice."). The plaintiff must also offer factual allegations supporting a finding of actual malice to survive a motion to dismiss. Harper v. Perkins, 459 F. App'x 822, 828 (11th Cir. 2012) (finding plaintiff properly alleged actual malice by asserting defendants intentionally tased him, with no justification, knowing he would become incapacitated and likely fall from a tree); see also Lavassani v. City of Canton, 760 F. Supp. 2d 1346, 1369 (N.D. Ga. 2010) (finding actual malice when defendants "expressed their disgust" toward plaintiff, "openly discussed their plans for injuring and arresting [plaintiff]," then "attempted to instigate a physical altercation" before actually arresting and injuring plaintiff).

Neither side argues Defendants Russell and Gaiter were not performing a discretionary function when apprehending Jones. Therefore, the Court considers whether they nonetheless forfeited official immunity by acting with actual malice.

As to Defendant Russell, Count 9 asserts he tased Jones out of malice because he "w[as] upset that [Jones] tried to flee." (Doc. 1, at 29.) Count 9 seems to imply Defendant Russell's malice can be inferred from the fact that Jones was neither a threat nor suspected of a serious crime when he fled, and Defendant Russell could have warned him before firing his taser. (Id.) However,

26

this case differs from Harper, as Plaintiffs do not allege Defendant Russell tased Jones knowing Jones faced a heightened risk of serious injury because of the cumulative effect of Defendant Gaiter's conduct.  And unlike in Lavassani, Plaintiffs do not allege Defendant Russell had expressed disdain for or a desire to hurt Jones before the tasing.  Finally, Plaintiffs do not establish how Defendant Russell's decision to tase Jones indicates he intended to cause the harm Jones would suffer, when Defendant Russell was unaware of the actions Defendant Gaiter was taking almost simultaneously.  Consequently, the Court finds Count 9 does not adequately set forth facts necessary to establish Defendant Russell acted with actual malice.  Finding Defendant Russell is entitled to official immunity, the Court **GRANTS** his motion to dismiss Count 9.

As to Defendant Gaiter, Count 9 alleges he "intentionally and maliciously slammed [Jones]'s head into the ground" when he tackled Jones, before striking Jones's head "three or more times [with his] closed fist or using the heel of his hand" while Jones was pinned to the ground by multiple officers and not actively resisting.  (Doc. 1, at 28-29.)  The complaint further asserts these actions "show[ Defendant] Gaiter's actual malice by intentionally targeting [Jones]'s head to injure him and punish him for attempting to leave the traffic stop."  Id. at 29.

27

While Plaintiffs' conclusory assertions regarding Defendant Gaiter's intent fail to establish actual malice, the Court nonetheless finds Count 9 alleges sufficient facts to overcome Defendant Gaiter's official immunity defense at this stage in the proceedings. Plaintiffs offer facts that, if true, show Defendant Gaiter used force against Jones "intentionally and without justification" when he struck Jones in the head after the tackle. Tabb, 2007 WL 951763, at *12. A jury could therefore infer that Defendant Gaiter purposefully acted to harm Jones. Finding Defendant Gaiter is not entitled to official immunity, the Court **DENIES** his motion to dismiss Count 9.

## V. CONCLUSION

For the foregoing reasons, Defendant Russell's motion to dismiss Counts 4, 5, and 9 is **GRANTED**. (Doc. 14.) Defendant Gaiter's motion to dismiss Count 4 is **GRANTED**. (Doc. 15.) Defendant Gaiter's motion to dismiss Count 6 is **GRANTED** regarding his conduct in tackling Jones and **DENIED** regarding his post-tackle use of force against Jones. (Id.) Defendant Gaiter's motion to dismiss Count 9 is **DENIED**. (Id.) Finally, Defendant Roundtree's motion to dismiss Count 8 is **GRANTED** insofar as it pertains to his liability for Defendant Russell's conduct and **DENIED** insofar as it pertains to his liability for Defendant Gaiter's conduct. (Doc. 13.)

28

**ORDER ENTERED** at Augusta, Georgia, this 11th day of February, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA