IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COUR
SOUTHERN DISTRICT OF GEORGIA

MAR 0 3 2026

FILED

A.K.J., minor, next of kin,     \*
through her mother and     \*
guardian ad litem, Letayia     \*
K.D. Anderson; and KEYANA     \*
GAINES, Administratrix of the     \*
Estate of Jermaine Jones, Jr.,     \*
Plaintiffs' Decedent,     \*
    \*
    Plaintiffs,     \*
    \*
    v.     \*         CV 123-153
    \*
RICHARD ROUNDTREE, Sheriff     \*
Augusta-Richmond County,     \*
individually, as a policy     \*
maker and supervisor of all     \*
Augusta-Richmond County     \*
Sheriffs' Deputies, et al.,     \*
    \*
    Defendants.     \*
    \*

**O R D E R**

Presently pending before the Court are Plaintiffs' first motion for reconsideration of the Court's February 11, 2025 Order (the "Order") (Doc. 48), second motion for reconsideration supplementing the first (Doc. 59), consent motion to amend his second motion for reconsideration (Doc. 73), consent motion to substitute their response (Doc. 76), and a joint motion to stay expert discovery and request for status conference (Doc. 55). For the following reasons, Plaintiffs' first and second motions for reconsideration are **DENIED**, the consent motion to amend

Plaintiffs' motion for reconsideration and consent motion to substitute filing are **GRANTED**[1], and the motion to stay expert discovery is **DENIED AS MOOT**.

## I. BACKGROUND

The Court detailed the procedural and factual history of this case in the Order.  (Doc. 45, at 2-6.)  On March 11, 2025, Plaintiffs timely moved under Federal Rule 59(e) "to reconsider dismissal of the tasing claim against [Defendant] Russell and the tackling claim against [Defendant] Gaiter," which the Court determines to be Counts Five and Six.[2]  (Doc. 48, at 1.)  On November 3, 2024, the Parties filed a joint motion to stay expert discovery and requested a hearing to discuss settlements relating to the minor Plaintiff.[3]  (Doc. 55.)  Plaintiffs then filed a

---

[1] Defendants consent to both filings, so the Court **GRANTS** the motions. Plaintiffs' motion to amend their second motion for reconsideration (Doc. 73) requests the addition of a signature page to Michael Leonesio's expert affidavit.  The Court considers the addition when reviewing the motion. Plaintiffs' consent motion to substitute filing (Doc. 76) seeks to replace Doc. 75-1, a copy of Plaintiffs' brief in opposition of Defendant Gaiter's motion for summary judgment, with Plaintiffs' response to Defendant Gaiter's statement of material facts.  The Court will consider the substitution in reviewing Defendant Gaiter's motion for summary judgment.

[2] Count Four, per se excessive force, is not mentioned in the motion for reconsideration. (Doc. 48.)  Dismissal of Count Nine was granted as to Defendant Russell and denied as to Defendant Gaiter.  (Doc. 45, at 28.)  Plaintiffs' motion for reconsideration offers no arguments about official immunity as to Defendant Russell, and Count Nine was not dismissed as to Defendant Gaiter, so the Court determines Plaintiffs' motion only pertains to Count Five and Count Six.

[3] Because all deadlines proposed in the motion have passed and Defendant Gaiter filed his motion for summary judgment as outlined in the filing timeline, the Parties' motion to stay (Doc. 55) is **DENIED AS MOOT**.  The Parties may refile a request for status conference if needed given recent case developments.

second motion for reconsideration, supplementing the first motion on Defendant Russell's excessive force claim. (Doc. 59.) Defendant Russell responded to Plaintiffs' second motion for reconsideration. (Doc. 70.) On February 2, 2026, Plaintiffs filed a consent motion to amend their motion for reconsideration, and on February 9, 2026, Plaintiffs replied to Defendants' response to their second motion for reconsideration. (Docs. 73, 74.) On February 14, 2026, Plaintiffs filed a consent motion to substitute their response. (Doc. 76.)

## II. LEGAL STANDARD

"Reconsideration of a previous order is an extraordinary remedy, to be employed sparingly." Armbuster v. Rosenbloom, No. 1:15-cv-114, 2016 WL 1441467, at *1 (S.D. Ga. Apr. 11, 2016) (citation and internal quotation marks omitted); see also Spellman v. Haley, No. 97-T-640-N, 2004 WL 866837, at *2 (M.D. Ala. Feb. 22, 2002) ("[L]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling."). Because such remedy "is not an appeal, . . . it is improper on a motion for reconsideration to ask the Court to rethink what the Court has already thought through – rightly or wrongly." Armbuster, 2016 WL 1441467, at *1 (citation and internal quotation marks omitted).

It is well established that "additional facts and arguments that should have been raised in the first instance are not

3

appropriate grounds for a motion for reconsideration." Gougler v. Sirius Prods., Inc., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005) (citation omitted); see also Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of a motion for reconsideration to afford a litigant "two bites at the apple"); Rossi v. Troy State Univ., 330 F. Supp. 2d 1240, 1249-50 (M.D. Ala. 2002) (denying motion for reconsideration when plaintiff failed to submit relevant evidence prior to entry of original order and failed to show good cause for the omission). Furthermore, "the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Burger King Corp. v. Ashland Equities, Inc., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (citation omitted). And, ultimately, "the decision to grant a motion for reconsideration is committed to the sound discretion of the district judge." Townsend v. Gray, 505 F. App'x 916, 917 (11th Cir. 2013) (citation and internal quotation marks omitted).

A court may reconsider a final order or judgment under Federal Rule of Civil Procedure 59 or 60. Brown v. Synovus Fin. Corp., 783 F. App'x 923, 931 (11th Cir. 2019) (citation omitted). Plaintiff moves under Rule 59(e) for his first motion. (Doc. 48, at 1.) Reconsideration under Rule 59(e) is justified only when there is: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear

4

error or prevent manifest injustice." <u>Schiefer v. United States</u>, No. 206-cv-206, 2007 WL 2071264, at *2 (S.D. Ga. July 19, 2007). Rule 59(e) "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." <u>Arthur v. King</u>, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation omitted).

### III. DISCUSSION

Plaintiffs argue the Court erred when it dismissed Count Five as to Defendant Russell and granted partial dismissal on Count Six as to Defendant Gaiter based on qualified immunity. (Doc. 48, at 2-5.) Plaintiffs' first motion seeks reconsideration under Rule 59(e) due to an alleged intervening change in controlling law and the need to correct clear error or prevent manifest injustice. (<u>Id.</u> at 1.)

The Court finds Plaintiffs merely relitigate old matters and assert inferences from new caselaw in their motions. There has been no intervening change in controlling law, clear error, or manifest injustice based on the Court's dismissal of Count Five and partial dismissal of Count Six.

**A. Count Five: Excessive Force by Defendant Russell**

Both motions for reconsideration address Count Five against Defendant Russell, so the Court reviews each below. (Docs. 48, 59.)

5

1. <u>First Motion for Reconsideration</u> (Doc. 48.)

Plaintiffs contest the Court's reasoning for the dismissal of Count Five: Defendant Russell's tasing of Jermaine Jones Jr. (Doc. 48, at 2.) Plaintiffs argue <u>Bradley v. Benton</u>, 10 F.4th 1232 (11th Cir. 2021), <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985), and <u>Coriell v. Snyder</u>, No. 23-12746, 2024 WL 4524692 (11th Cir. Oct. 18, 2024) support their motion for reconsideration. (<u>Id.</u> at 2-3.)

The Order addressed the factual distinctions between the present case and both <u>Bradley</u> and <u>Garner</u>, determining that Defendant Russell did not violate a clearly established right, so he is entitled to qualified immunity on Count Five. (Doc. 45, at 12-15.) Plaintiffs' additional discussion of <u>Bradley</u> and <u>Garner</u> does not further distinguish the facts such that the Court finds a clear error in its previous decision. (Doc. 48, at 2.) Plaintiffs argue it is "obvious from the fact that skateboarders and bicyclists were [sic] helmets," that a person immobilized by a taser falling on asphalt is likely to hit their face or head and cause bodily injury. (<u>Id.</u>) The Court is not convinced this argument likens this case to <u>Bradley</u>, where a fleeing suspect was scaling a high wall when he was tased. 10 F.4th at 1236. Jones was neither scaling a wall nor riding on any mode of transportation when tased, he was simply running across pavement at ground level. (Doc. 1, at 5.) Plaintiffs' arguments involving skateboards are irrelevant to the facts of either case and fail to support their

6

assertions. Either way, the comparison is weak – one does not see runners wearing helmets on their Sunday jogs. The Court finds Plaintiffs have not provided "strongly convincing" facts or law to support reconsideration and have not otherwise shown Jones was in a similarly precarious position to Bradley by simply running on asphalt at ground level. Burger King Corp., 181 F. Supp. 2d at 1369.

Plaintiffs also cite an unreported Eleventh Circuit case decided after briefing on this matter, Coriell, 2024 WL 4524692. (Doc. 48, at 2-3.) In Coriell, the plaintiff, Coriell, was a passenger in a car stopped by Officer Snyder. 2024 WL 4524692, at *1. Once Coriell was ordered out of the car, he pushed Officer Snyder and fled across grass toward a parking lot. Id. Officer Snyder drew his taser and fired it within two seconds of Coriell's flight. Id. Coriell was shocked, went rigid, and fell face first into the asphalt of the parking lot. Id. at *2. Coriell sustained facial lacerations, a fractured skull, brain hemorrhaging, and a concussion. Id. The Eleventh Circuit affirmed the district court's decision that because Officer Snyder's use of force was objectively reasonable, he did not violate Coriell's Fourth Amendment rights, and he was entitled to qualified immunity. Id. at *5.

As in this case, Coriell relied on Bradley to argue he was in a precarious position because he was passing from grass to asphalt

7

when he was tased. Id. at *4. The Eleventh Circuit distinguished the case from Bradley, stating "[u]nlike falling from a high wall, not every reasonable officer would have known of the likelihood of serious injury from falling where Coriell was when he was tased." Id. at *5. Here, Plaintiffs rely on Coriell's analysis of the plaintiff's precarious position argument, in which the Eleventh Circuit stated that because Coriell was running on grass when the taser was deployed, "a reasonable officer . . . would not have known or suspected that Coriell would land face first on the asphalt." (Doc. 48, at 3 (quoting Coriell, 2024 WL 4524692, at *4).) Plaintiffs assert that given this statement, the inference follows that an officer should be denied qualified immunity when tasing an individual already over asphalt, as it is reasonably known by the officer that the person will land on the asphalt. (Id.) The Court finds Plaintiffs' assumption goes beyond what the Coriell court found and does not directly result from the Eleventh Circuit's holding. It is extremely common for police officers to interact with members of the public while standing over asphalt. If the Court accepts Plaintiffs' argument, it would effectively restrict and discourage police officers from using tasers over any asphalt-covered surfaces, which is an unreasonably broad finding. Therefore, Plaintiffs' inference about the Eleventh Circuit's intentions in Coriell is unpersuasive and is not an "intervening change in controlling law" for purposes of reconsideration.

8

Schiefer, 2007 WL 2071264, at *2.  It is not the Court's role to infer broader meaning from a narrow statement made by the Eleventh Circuit.

Additionally, Coriell was decided after this case took place, so it may not be used to show Defendant Russell violated a clearly established right.  As discussed in the Order, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (Doc. 45, at 12 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).)  In other words, "'the state of the law at the time of an incident' must have given the defendant 'fair warning' of the unconstitutionality of his conduct."  (Id. (quoting Callwood v. Jones, 727 F. App'x 552, 559 (11th Cir. 2018)).)  Coriell was decided well after the events of this case, so even if the Eleventh Circuit meant to state what Plaintiffs infer, Defendant Russell did not have fair warning of the unconstitutionality of his conduct at the time he interacted with Jones in 2021.  Callwood, 727 F. App'x at 559.

Plaintiffs also make other contentions about police training on tasing, proportionality of force used, and lack of warnings. (Doc. 48, at 3-4.)  These allegations were included in the original complaint and reviewed by the Court in preparing the Order.  (Doc. 1, at 15-17.)  There are no additional facts or arguments provided

9

in the reconsideration motion that show a need to correct clear error or prevent manifest injustice.

Based on the above, Plaintiffs' first motion for reconsideration as to Count Five against Defendant Russell is **DENIED**.

2. <u>Second Motion for Reconsideration (Doc. 59.)</u>

Plaintiffs' second motion argues the Court erred when it "erroneously reduce[d] the case to whether there was precedent about the moment of the tasing of a fleeing suspect not at elevated height — rather than evaluating the pleaded warning opportunity and pre-force control opportunity as part of the totality of the circumstances[.]" (Doc. 59, at 1.) Plaintiffs cite <u>Barnes v. Felix</u>, a May 2025 Supreme Court case decided after the Order, to support reconsideration. (<u>Id.</u> (citing 605 U.S. 73 (2025)).) The issue taken up in <u>Barnes</u> was "whether, in resolving Fourth Amendment excessive-force claims, courts may apply the moment-of-threat rule[.]" 606 U.S. at 79 (citation omitted). The Supreme Court held the proper inquiry into the reasonableness of police force under the Fourth Amendment requires the analysis of the "totality of the circumstances." <u>Id.</u> at 80.

Defendant Russell argues Plaintiffs' motion does not raise new or intervening law because the totality of the circumstances test is not new law. (Doc. 70, at 4.) Defendant Russell also argues <u>Barnes</u> "did not create a [']duty to warn['] or a [']duty to

10

use pre-force control opportunities[']  before an officer could use force in apprehending a suspect," but only dealt with the timing of the encounter to create context around the force. (Id.) Lastly, Defendant Russell asserts Plaintiffs relitigate previous arguments from their response to Defendants' motion to dismiss that have already been adjudicated. (Id. at 5.)

The Order held "Plaintiffs [did not carry] their burden of showing the alleged unconstitutionality of Defendant Russell's conduct was clearly established at the time of the incident"; thus, the motion to dismiss on Count Five per Defendant Russell was granted. (Doc. 45, at 15.) The Order outlined how to determine whether a right was clearly established, particularly if "the state of the law at the time of the incident" gave defendant a "fair warning" of the unconstitutionality of his conduct. (Id. at 12 (citation omitted).) The Court also relied on Eleventh Circuit precedent, showing a right can be deemed to be clearly established in one of three ways: (1) case law clearly establishing the constitutional right with indistinguishable facts; (2) a statement in the Constitution, a statute, or case law that describes the right; or (3) egregious conduct that clearly violates a right. (Id. (citing Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015)).) The Court's discussion of Count Five centered around the qualified immunity defense and what was clear to Defendant Russell about the law at the time of the incident. (Id. at 11-15.) Barnes fails to

11

address the qualified immunity defense for government officials in the context of Fourth Amendment violations. See 605 U.S. at 73–84. Further, new caselaw does not impact what Defendant Russell knew at the time and whether it would be clear to a reasonable officer that his conduct was unlawful in the situation during the incident in 2021. Therefore, Plaintiffs' arguments about Barnes do not meet the requirements for the Court to grant reconsideration on Count Five.

Further, Plaintiffs introduce body camera footage as part of their supplemental motion, but fail to argue how the footage qualifies as new evidence for purposes of reconsideration. (Doc. 59, at 5-6.) Additionally, the footage would not show what Defendant Russell knew at the time of the incident regarding the lawfulness of his actions. Given that a fair warning of unconstitutionality with one's conduct is the crux of the issue on reconsideration for Count Five, the body camera footage is immaterial. The footage does not speak to the governing law at the time of the incident such that Defendant Russell was fairly warned of any unlawfulness in his actions.

Finally, Plaintiffs provide a preliminary expert report of Michael Leonesio to show Defendant "Russell had an opportunity to warn and should have." (Id. at 6.) Again, Plaintiffs do not argue the report is new evidence that warrants reconsideration. (Id.) The Court finds it is not new evidence, given Plaintiffs could

12

have hired an expert to create a report and review the evidence at any point, and they did not gain access to this or any expert recently.   Additionally, nothing in the report speaks to the qualified immunity defense.

As such, Plaintiffs' supplemental motion has failed to show an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.   Schiefer, 2007 WL 2071264, at *2.   As a result, Plaintiffs' second motion for reconsideration on Count Five against Defendant Russell is **DENIED**.

## B. Count Six: Excessive Force by Defendant Gaiter

Next, Plaintiffs dispute dismissal of a portion of Count Six: Defendant Gaiter's tackle of Jones.   (Doc. 48, at 4.)   Plaintiffs contend "[t]he Court erroneously drew the inferences from the complaint in [Defendant] Gaiter's favor . . . to dismiss the federal clam [sic] . . . and as to the dismissal of the state claim as to the tackle."   (Id.)   The Court did not grant dismissal on the state claim against Defendant Gaiter (Count Nine), so the Court reviews Count Six only.   (Doc. 45, at 28.)

In the Order, the Court found Defendant Gaiter's alleged conduct "falls short of the type of egregious conduct the Eleventh Circuit has found satisfies the 'obvious clarity' test."   (Id. at 20.)   It also found Defendant Gaiter was entitled to qualified immunity for the tackling of Jones because "it was not clearly

established at the time that this use of force was unconstitutional." (Id. at 17.)

Plaintiffs argue a jury could find Defendant Gaiter acted "recklessly and with wanton disregard for . . . Jones['] right not to have his head smashed against the pavement, because the tackle was not done in an objectively reasonable manner." (Doc. 48, at 4.) Plaintiffs make no other substantive arguments to support this contention and fail to show clear error by the Court. Plaintiffs provided no controlling precedent finding that apprehending a non-compliant or fleeing suspect by tackle violates clearly established law, and they do not offer additional information to warrant reconsideration.

Because "the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," and Plaintiffs failed to do so, the motion for reconsideration as to Count Six against Defendant Gaiter is **DENIED.** Burger King Corp., 181 F. Supp. 2d at 1369 (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' first and second motions for reconsideration of the Order (Docs. 48, 59) are **DENIED** and both consent motions to amend and supplement (Docs. 73, 76)

14

are **GRANTED**.   The Parties' motion to stay expert discovery (Doc. 55) is **DENIED AS MOOT**.

   **ORDER ENTERED** at Augusta, Georgia, this ___3rd___ day of March, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

15